AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: /S BowBottomly 3/24/2026

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED

10:41 am, Mar 25, 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
By: AC, Deputy Clerk

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

IN THE MATTER OF THE SEARCH OF TWO CELLULAR TELEPHONES: (1) A BLACK MOTOROLA WITH CRACKED SCREEN AND (2) A BLACK SAMSUNG BEARING IMEI 358142950034429

Case No. MJ-26-151 -CMS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☐ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of Controlled Substances |

The application is based on these facts:

See Attached Affidavit of FBI Special Agent Ryan E. Parton

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ____________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

RYAN E. PARTON, FBI Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 26, 2026

*Judge's signature*

City and state: Oklahoma City, Oklahoma

CHRIS M. STEPHENS, United States Magistrate Judge

*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF TWO CELLULAR TELEPHONES: (1) A BLACK MOTOROLA WITH CRACKED SCREEN AND (2) A BLACK SAMSUNG BEARING IMEI 358142950034429** | **Case No. MJ-26-**151-CMS |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ryan E. Parton, Special Agent with the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, specifically, the electronic devices identified below and in **Attachment A**, which are currently in law enforcement possession, and the extraction from the devices of electronically stored information described in **Attachment B**, which constitutes evidence of a violation of 21 U.S.C. § 841(a)(1).

2. I am a federal law enforcement officer as defined under Federal Rule of Criminal Procedure 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing

federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI), currently assigned to the Oklahoma City, Oklahoma Field Office. As such, I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered of the United States authorized to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

4. I have been involved in investigative matters, including the unlawful importation and distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846, and 856(a)(1).

5. I have been in law enforcement since 2003, I became a federal agent in July of 2012. After successfully completing the training academy for the Federal Bureau of Investigation (FBI), I was assigned to Portland, Oregon for approximately eight years. During my time as an FBI Agent, I conducted countless arrests pertaining to human and narcotics smuggling. I have also received specialized training in covert surveillance and tactics. During my employment in law enforcement, I have received advanced training for drug and smuggling operations through the International Narcotics Interdiction Association and JETWAY, which specifically focuses on drug trafficking and smuggling within transportation networks.

6. As part of my duties as a Special Agent, I investigate criminal violations relating to trafficking in illegal narcotics. As a result of my training and experience, including information provided by other federal agents with applicable knowledge, I am familiar with the tactics, methods, and techniques used by drug traffickers. I have participated in the execution of multiple search warrants targeting various types of evidence and property. As a result of my training and experience, I know the following:

a. I am aware that drug couriers, and people associated with drug trafficking organizations (DTOs), often use electronic devices, including computers, tablets, cellular phones, and other electronic storage devices, to communicate and execute electronic transactions which can, in turn, create automatic records and documentation of the transactions;

b. I am aware that it is particularly common for individuals engaged in the sale and distribution of illegal drugs to use electronic devices to track and document financial transactions;

c. I am aware that individuals engaged in drug trafficking will often maintain more than one cell phone or electronic device, and that they will frequently keep contact information and other evidence of their financial dealings with DTOs on cellular phones, computers, tablets, and other storage devices and that they often

keep such electronic devices on or near their person.

d. I am aware that drug traffickers use their cellular phones and other electronic devices to execute financial transactions through banks, financial institutions, and peer-to-peer mobile payment platforms in furtherance of their drug trafficking activities.

7. The facts set forth in this affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned parties. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation.

8. I am submitting this Affidavit in support of a search warrant authorizing a search of a black Motorola cell phone with a cracked screen; (hereinafter, the "**Target Cell Phone 1**"), and a black Samsung cell phone bearing IMEI 358142950034429 (hereinafter, the "**Target Cell Phone 2**"). The **Target Cell Phones 1** and **2** are currently stored in secure evidence at the FBI Oklahoma City Field Office, located at 3301 West Memorial Road, Oklahoma City, Oklahoma, 73134, as further described in **Attachment A**, which is incorporated into this Affidavit by reference. I am submitting this Affidavit in support of a search warrant, which would authorize the forensic examination of the **Target Cell Phone 1** and **Target Cell Phone 2** for the purpose of identifying

electronically stored data that is particularly described in **Attachment B**, which constitutes evidence of a violation of 21 U.S.C. § 841(a)(1). The requested warrant would also authorize the seizure of the items and information specified in **Attachment B**.

9. Based on my training and experience, and the facts set forth in this Affidavit, there is probable cause to believe that a violation of 21 U.S.C. § 841(a)(1), have been committed by **Jose Carlos MORALES-GUTIERREZ** and others. There is also probable cause to search the property described in **Attachment A** for evidence, fruits, co-conspirators, and instrumentalities of these crimes, as described in **Attachment B.**

10. This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States. . . that has jurisdiction over the offense being investigated" 18 U.S.C. §2711(3)(A)(i), and "is in . . . a district in which the provider . . . is located or in which the wire or electronic communication, records, or other information are stored." 18 U.S.C. §2711(3)(A)(ii).

11. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant. The information contained in this Affidavit is based upon my personal knowledge

and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records.

**PROBABLE CAUSE**

12. On March 11, 2026, at approximately 0011, an Oklahoma Highway Patrol trooper in Custer County, Oklahoma, observed a red semitruck and trailer with a Maine Tag ending 0059 commit a traffic violation, so he initiated a traffic stop of the semi-truck.

13. The trooper contacted the driver and sole occupant. The driver provided the trooper a Mexico International Driver's License with the name **JOSE C. MORALES-GUTIERREZ**, date of birth, XX/XX/1994. He stated he did not have an American drivers' license but explained that he had a work permit for the United States. The trooper asked **MORALES-GUTIERREZ** to collect his paperwork for the truck and return to his police vehicle for a warning.

14. Both returned to the trooper's vehicle and on the way the trooper explained to **MORALES-GUTIERREZ** that his Department of Transportation (DOT) sign was improperly sized. Both sat inside the trooper's vehicle where the trooper began writing the warning for the violation.

15. As the trooper typed, he asked **MORALES-GUTIERREZ** where he was going, and he responded, "New Jersey" but then corrected himself and said, "more front than New Jersey and it's the next state." The trooper inspected **MORALES-GUTIERREZ**'s bill of lading for the load he was hauling and saw the

destination was Johnstown, New York. **MORALES-GUTIERREZ** was questioned further about his destination and eventually agreed he was going to New York. Based on his training and experience, the trooper found it odd that **MORALES-GUTIERREZ** did not know the state of his destination and suspected he may be involved in transporting illegal narcotics.

16. Then **MORALES-GUTIERREZ** was asked about the trucking company, and he explained it was his trucking company named "AMG," but the current trip he was on was for his friend's company called "APC." The trooper noted company name on the side of the semi-truck said "AMDG," which was neither of the company names according to **MORALES-GUTIERREZ**. Based on his training and experience, the trooper found this statement odd and further suspected **MORALES-GUTIERREZ** was transporting illegal narcotics.

17. The trooper entered the semi-truck's registration information and observed the registration expired in September of 2025. The trooper then requested the National Crime Information Center (NCIC) returns for **MORALES-GUTIERREZ**. While waiting for the returns, the trooper deployed his state certified K9 around the exterior of the semi-truck and trailer for a free air sniff, suspecting the semi-truck was transportation illegal narcotics. The K9 indicated illegal narcotics were in the trailer of the semi-truck. The K9 is trained on narcotics such as cocaine and methamphetamine.

18. **MORALES-GUTIERREZ** was placed in the rear seat of the

trooper's vehicle and then began searching the semi-truck and trailer.

19. The trooper opened the trailer door and to the left there was a duffel bag inside. Inside the bag were several plastic wrapped packages containing a crystal-like substance. Based on the trooper's training and experience, he identified the substance as methamphetamine. The total weight of the duffel bag and the suspected methamphetamine was 24.68 pounds. Preliminary tests were performed on the crystal-like substance, and it tested positive for methamphetamine. A picture of the opened semi-truck trailer, the bag, and the methamphetamine is below:



20. After the methamphetamine was found, **MORALES-GUTIERREZ** was placed under arrest. **Target Cell Phone 1** was discovered on the person of

**MORALES-GUTIERREZ.** **Target Cell Phone 2** was discovered within the semi-trucks cab, on the driver's side dashboard.

21. **MORALES-GUTIERREZ**'s immigration status was checked, and it was confirmed that he was a visa overstay. According to a records check, **MORALES-GUTIERREZ** entered the United States on February 18, 2026, on a non-immigrant visa, which expired on March 1, 2026. ICE sent a detainer for **MORALES-GUTIERREZ** to the Custer County Jail. **MORALES-GUTIERREZ** was transported to the Custer County Jail where he was remanded into the custody of jail staff.

22. On March 17, 2026, a criminal complaint was signed in the United States District Court for the Western District of Oklahoma, a federal arrest warrant for **MORALES-GUTIERREZ** was also issued for allegations found under Title 21 U.S.C. 841(a)(1); possession of methamphetamine with intent to distribute; case number MJ-26-137-STE.

23. Prior to the above incident, FBI Boston had obtained a warrant within the United States District Court District of Massachusetts on March 5, 2026. The warrant authorized the government to receive precision geolocation data on a cell phone utilizing telephone number (XXX) XXX-8601 (hereinafter, the "Cell Phone 8601"), subscribed to Morales J Trucking LLC, 1624 Gateway Rd, Calexico, CA 92231. The pertinent probable cause listed in the affidavit is as follows.

24. Carlos Manuel Soto Garcia was charged by federal Complaint in the United States District Court District of Massachusetts with possession with intent to distribute methamphetamine, in violation of Title 18, U.S.C. Section 841(a)(1), on March 2, 2026, following his arrest on that date; Case number 26-MJ-06250-MPK.

25. During a post arrest interview of Soto Garcia, he admitted he had retrieved approximately 20 pounds of methamphetamine from a truck driver in Connecticut on March 2, 2026. Soto Garcia stated he provided the truck driver with $2,000 in exchange for the methamphetamine, but he was unaware of the truck driver's identification because he had just met him that day.

26. Soto Garcia informed investigators that he believed the truck driver was from the Southern California area. Soto Garcia informed investigators that this deal was arranged by FNU LNU a/k/a PADRINO. Soto Garcia stated that PADRINO put him into contact with the truck driver on the day they were to meet (March 2, 2026). Investigators learned Soto Garcia communicated with the truck driver directly utilizing WhatsApp which was linked to the phone number of Cell Phone 8601.

27. Boston FBI was actively watching the geolocation data for Cell Phone 8601 on March 11, 2026. Boston FBI provided the Oklahoma Highway Patrol geolocation data and advised the semi-truck travelling with Cell Phone 8601, may be involved in drug trafficking. Oklahoma Highway Patrol ultimately located the

semi-truck operated by **MORALES-GUTIERREZ** and conducted a stop after observing a traffic violation.

## AUTHORIZATION REQUEST

28. The **Target Cell Phone 1** and **Target Cell Phone 2** have remained in law enforcement custody since March 11, 2026, and is currently stored at the FBI Oklahoma City Field Office. **Target Cell Phone 1** and **2** have been stored and secured such that their contents, to the extent material to this investigation, is in substantially the same state as the time the phones were seized.

29. Based on my training and experience, I am aware that individuals involved in trafficking illegal drugs often use cellular phones, and often multiple cell phones, to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal drugs. Such cellular phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug-trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos.

30. Based on my training and experience, I know that individuals involved in trafficking illegal drugs often take and store photographs of controlled substances and the proceeds of drug sales, and usually take and store these photographs using their cellular phones. I also know from my training and

experience that evidence of financial transactions conducted in furtherance of drug trafficking will often be found on a suspect's cellular phone.

31. Based on my training and experience, I know that evidence of drug trafficking, to include motives, operational planning, operational preparation, and other relevant evidence will be found in the criminal's electronic devices including their cellular phones. This evidence often includes location data stored in the internal memory of the cellular telephone, encrypted communications between co-conspirators, non-encrypted communications between co-conspirators in the form of emails and text messages, and other accounts linked to the criminal and their criminal activity to include social media accounts which can be used in the planning and execution of a crime.

32. Based on my training and experience, I know that electronic devices, such as **Target Cell Phone 1** and **2**, can store information for long periods of time, even years. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the electronic device. This information can sometimes be recovered months or years later using readily available forensic tools. This is true even if the user of the electronic device deleted the file. This is so because when a person "deletes" a file on a computer or electronic device, the data contained in the file does not actually disappear; rather, the data remains on the storage medium until it is overwritten by new data.

33. The evidence mentioned above indicates **MORALES-GUTIERREZ**

has been trafficking in substantial amounts of controlled substances. Based on my training and experience and the evidence in this case, I believe **MORALES-GUTIERREZ** has been involved in drug trafficking for many months, if not years, and certainly was drug trafficking as of February 18, 2026. Specifically, he is a truck driver from Mexico who crossed the border into the United States on February 18, 2026. From the border, **MORALES-GUTIERREZ** traveled to Boston, Massachusetts on March 2, 2026, where he dropped off a large quantity of methamphetamine. I know based on my training and experience, large drug loads found in commercial vehicles often take time to plan and coordinate. Often drug cartels and drug suppliers will provide smaller drug amounts to new couriers and as the courier gains experience and "trust" larger loads will be provided. I believe it is reasonable to assume **MORALES-GUTIERREZ** was involved drug trafficking since at least the beginning of 2026. Therefore, I am requesting the timeline for the search warrant to be January 1, 2026, through the date of **MORALES-GUTIERREZ**'s arrest on March 11, 2026.

## CONCLUSION

34. Based on the above information, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1), has occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **Target Cell Phones 1** and **2**. Therefore, I respectfully request that this Court issue a search warrant for the **Target Cell Phones 1** and **2**, described in **Attachment A**, authorizing the

seizure of the items described in **Attachment B**.

35. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Cell Phones 1** and **2** consistent with the warrant. The examination may require law enforcement to employ techniques including, but not limited to, computer-assisted scans of the entire medium, which might expose many parts of **Target Cell Phones 1** and **2** to human inspection in order to determine whether it is evidence described by the warrant.

36. Because the warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Respectfully submitted,

Ryan E. Parton
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 25th day of March 2026.

Chris M. Stephens

CHRIS M. STEPHENS
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is described as a black Motorola cell phone with a cracked screen; (hereinafter, the "**Target Cell Phone 1**"), and a black Samsung cell phone bearing IMEI 358142950034429 (hereinafter, the "**Target Cell Phone 2**"). **Target Cell Phone 1** and **2** are currently located in secure evidence storage at the FBI Oklahoma City Field Office, located at 3301 West Memorial Road, Oklahoma City, Oklahoma 73134. This warrant authorizes the forensic examination of **Target Cell Phone 1** and **2** for the purpose of identifying the electronically stored information described in Attachment B. **Target Cell Phone 1** and **2** are pictured below.

1. **Target Cell Phone 1**



## 2. Target Cell Phone







## ATTACHMENT B

1. All records on the **Target Cell Phone 1** and **2**, described in **Attachment A,** that relate to a violation of 21 U.S.C. § 841(a)(1), involving **Jose Carlos MORALES-GUTIERREZ**, from January 1, 2026, through March 11, 2026, including, but not limited to:

a. lists of customers and co-conspirators and related identifying information;

b. communications and evidence of communications including, but not limited to, call logs, voicemails, text messages, multimedia messages, emails, and messages sent through applications, between the user of the **Target Cell Phone 1** and **2** and customers and co-conspirators;

c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

e. any information recording **MORALES-GUTIERREZ's** schedule or travel including, but not limited to, location information;

f. any images or videos involving **MORALES-GUTIERREZ**, money, drugs, drug ledgers, drug paraphernalia, firearms, vehicles, bedrooms, backpacks, residences, and other individuals believed to be involved in drug trafficking; and

g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Target Cell Phone 1** and **2** at the time the things described in this warrant

were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.